IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

```
---------------------------------------------------------------X
MICHAEL BROWN,                                   :
                                                 :    No. 3:15-cv-588
                        Plaintiff,               :    CLASS ACTION
                                                 :    COMPLAINT AND
             -against-                           :    JURY DEMAND
                                                 :
SWAGWAY, LLC, and                                :
MODELL'S SPORTING GOODS, INC,                    :
                                                 :
                        Defendant.               :
---------------------------------------------------------------X
```

## INTRODUCTION

Plaintiffs Michael Brown ("Plaintiff"), by and through his undersigned attorneys, alleges, upon information and belief, except as to the allegations concerning Plaintiff himself, which Plaintiff alleges upon personal knowledge, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant Swagway, LLC ("Swagway") under the implied warranty of merchantability, New York's Consumer Protection from Deceptive Acts and Practices Act, Article 22-a, General Business Law §§ 349 and 350 ("GBL 349 & 350") and similar statutes in effect in other states, and the law of unjust enrichment pursuant to FED. R. CIV. P. 23 on behalf of all consumers who purchased a "Swagway Smart Balancing Electric Skateboard" or similar models (the "Swagway Hoverboard") nationwide (the "Class"). Plaintiff and the Class are entitled to compensatory as well as punitive damages.

2. Plaintiff brings this action against Defendant Modell's Sporting Goods, Inc. ("Modell's") under the implied warranty of merchantability, GBL 349 and similar

1

statutes in effect in other states, and the law of unjust enrichment pursuant to FED. R. CIV. P. 23 on behalf of all consumers who purchased a Swagway Hoverboard nationwide from Modell's (the "Subclass").  Plaintiff and the Subclass are entitled to compensatory as well as punitive damages.

## JURISDICTION AND VENUE

3. This Court has Jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act ("CAFA"). Some members of the Class of plaintiffs are citizens of a State different from a defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

4. Plaintiff's claims involve matters of national or interstate interest.

5. Defendants are subject to personal jurisdiction in that Swagway's principal place of business is in this District and Modell's conducts significant business with Swagway.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8. Plaintiff Michael Brown was, at all relevant times, an adult individual, domiciled in Chappaqua, New York.

9. Upon information and belief, Swagway is a limited liability company registered in Indiana. Swagway operates a place of business at 3431 William Richardson Dr., Suite F, South Bend IN 46628.

10. Upon information and belief, Defendant, Modell's, is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 498 Seventh Avenue, 20th Floor, New York, New York.

11. Swagway and Modell's (together "Defendants") were and are doing business in the State of Indiana, including St. Joseph County.

## STATEMENT OF FACTS

**The Swagway Hoverboard**

12. Swagway sells the Swagway Hoverboard.

13. According to Swagway's, website**,** "SWAGWAY is very meticulous" with respect to the manufacture of Swagway Hoverboards. "We make sure our boards are made with the finest parts. All of our boards come with a high quality aluminum alloy frame. Our batteries are a high-powered lithium ion Samsung/LG battery. Our technology is built on a strong platform, which eliminates reaction time from rider to board, giving the ability to maneuver wherever the user pleases. We are still a higher quality but for an even more affordable price."

14. A February 4, 2015 CNBC article quoted a Swagway corporate representative as stating, "These types of boards are new so there seems to be a lot of varying information out there, but for sake of safety, we can't stress enough how the caliber of the components used can make an impact in the overall safety of these boards."

15. The Swagway Hoverboard runs off of a battery that is charged via an ordinary electric wall socket. The Swagway User Manual provides: "Locate the charging port on the back of the Swagway. • Ensure the charging port is dry. • First plug the charger into the wall (100V-240V; 50, 60Hz). Verify the green light lights up, then plug the other end of the charger into the Swagway. • The red indicator light on the charger indicates that it is charging properly. If the light does not come on, check that the charger is connected securely to the wall and to the Swagway."

16. Upon information and belief, Swagway Hoverboards are sold throughout the United States. The following graphic, copied from Swagway's website, www.swagway.com, provides transit time for shipping Swagway Hoverboards to every state:



17. Swagway Hoverboards are available for purchase from Modell's website, www.modells.com. They are also available for sale at Swagway.com, Amazon.com, newegg.com, pcdirect.com, Target.com, and Walmart.com.

18. Swagway markets its Swagway Hoverboards on its own website, as well as Facebook (facebook.com/swagwayusa), Twitter (twitter.com/swagwayusa), Pinterest (www.pinterest.com/swagwayusa), Youtube (https://www.youtube.com/channel/UCncZXPMRgIOQcmpKjhCT9oA), and Instagram (instagram.com/swagwayusa), and through additional channels, including QVC.

19. Swagway Hoverboards have been featured in the following television shows with a nationwide audience: Good Morning America, The Inside, The Today Show, The Ellen Degeneres Show, and CBS This Morning. They have also been featured in such publications as USA Today, Wired, People, and PC Magazine.

20. In actuality, the Swagway Hoverboard is unsafe for its intended use inasmuch as it is defective and presents a material likelihood that it will self-combust or short-circuit while charging, leading to fire and/or other damage.

21. In marketing and selling Swagway Hoverboards on its website, as well as otherwise, Swagway did not disclose the defects in the product that could cause it to be self-combusting and otherwise dangerous, and, rather, impliedly or expressly represented that the product would be safe for its intended purposes and free from defect and/or failed to disclose that the product was unsafe, not fit for its intended purposes and not free from defect.

22. In deciding to market and sell Swagway Hoverboards, as on its website, as well as within its stores, Modells failed to take proper steps to ensure that the product was

safe and free from defect and not inherently dangerous as a result of its defect, and, rather impliedly or expressly represented that the product would be safe for its intended purposes and free from defect and/or failed to disclose that the product was unsafe, not fit for its intended purposes and not free from defect.

23. Unless enjoined, Defendants will continue to market and sell the defective and dangerous Swagway Hoverboards.

**Hoverboards In America and Throughout the World Have Been Self-Combusting**

24. Upon information and belief, self-balancing electric scooters have been combusting across the country and the world.

25. On December 9, 2015, Newsweek published an article with the headline "Another Day, Another Hoverboard Explosion: Concern Over Safety Continues to Grow." The article reported that a family home in Louisiana and an apartment in Hong Kong burned down because of hoverboard fires.

26. The Newsweek article added that "nearly all hoverboards are manufactured in China with little safety oversight."

27. On November 9, 2015, the website BuzzfeedNews published an article entitled "Those Hoverboard Things Kids Ride Around On Keep Exploding." The article reported that a woman in England suffered burns after the hoverboard she was riding on caught fire. The article added that within the past month, London firefighters responded to two calls where hoverboards caught fire in homes.

28. Similarly, on December 3, 2015, the Wall Street Journal published a video under the caption "Hoverboard Fire Safety Concern Grows."

**Plaintiff's Swagway Hoverboard Self-Combusts**

6

29. On or about November 24, 2015, Plaintiff purchased a Swagway Hoverboard on www.modells.com.

30. The cost of the unit was $399.99 (and the total price was $443.49).

31. Plaintiff purchased the Swagway Hoverboard for his children, as a Chanukah present.

32. Neither Swagway nor Modell's warned Plaintiff that there was a substantial risk that the Swagway Hoverboard could burst into flames while charging.

33. On December 6, 2015, on the first night of Chanukah, the Swagway Hoverboard was removed from its box.

34. After approximately thirty minutes of use, the Swagway Hoverboard indicated low battery.

35. The Swagway Hoverboard was then plugged into an electrical outlet in accordance with Swagway's instructions.

36. Approximately 45 minutes later, the Swagway Hoverboard burst into flames.

37. The flames ignited the packaging materials, which were located nearby the Swagway Hoverboard.

38. The fire was so substantial that the fire department had to respond to the scene.

39. The fire destroyed the Swagway Hoverboard and damaged Plaintiff's home, as is shown by the following:

7



## CLASS ALLEGATIONS

40. Plaintiff sues on his own behalf and on behalf of the Class and Subclass as defined above, pursuant to FED. R. CIV. P. 23(a), (b)(2) and (b)(3) seeking to assert the claims set forth below.

41. The Class and Subclass are so numerous that joinder of all members is impracticable. Although the precise number of purchasers of Swagway Hoverboards is unknown, the number sold and identity of such purchasers is known to Defendants, are readily identifiable, and can be located through Defendants' records. Upon information and belief, there are thousands of members of the Class and the Subclass.

42. There are questions of law and fact common to the members of the Class and Subclass that predominate over any questions solely affecting the individual members of the Class and Subclass.

43. The critical question of law and fact common to Plaintiff, the Class and Subclass that will materially advance the litigation is whether, and if so when, Defendants learned that there was a substantial risk that the Swagway Hoverboard was defective and posed a danger of a fire hazard by bursting into flames during normal charging operation.

44. Other questions of law and fact common to the Class and Subclass that will materially advance the litigation include, without limitation:

   a. Whether Defendants failed to warn Plaintiff and the members of the Class and the Subclass that there was a substantial risk the Swagway Hoverboard could burst into flame during normal charging operation;

   b. Whether Defendants' failure to inform Plaintiff and members of the Class and the Subclass that there was a substantial risk that the Swagway Hoverboard was combustible during normal charging operation was a deceptive act and material omission of fact to reasonable purchasers of Swagway Hoverboards;

   c. Whether Defendants are liable for all damages claimed by Plaintiff and the Class and Subclass, including, without limitation, compensatory, punitive and statutory damages, restitution, interest, costs and disbursements, and attorneys' fees;

   d. Whether Defendants' failure to inform consumers that the Swagway Hoverboards were defective and susceptible to combustion constituted a deceptive or unfair act or acts in violation

9

of the claims set forth in this Complaint, for which plaintiff and members of the Class are entitled to recover damages; and

e. Whether Defendants should be enjoined from continuing to market and sell an unsafe and defective product and from continuing to market and sell the Swagway Hoverboards in a misleading and deceptive manner as set forth in this Complaint and whether Defendants should be compelled, among other things, to offer to the members of the Class and Subclass with an option to return for the full amount paid (and incidental cost such as shipping and taxes) and/or repair and replacement the product by providing them with a safe and non-defective product, at Defendants' expense.

45. Plaintiff's claims are typical of the claims of the members of the Class and Subclass. Plaintiff has the same interests in this matter as all other members of the Class and Subclass.

46. Plaintiff is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in consumer class action litigation.

47. Class certification of Plaintiff's claims is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclass, making appropriate both declaratory and injunctive relief with respect to the Class and Subclass. The members of the Class and Subclass are

entitled to injunctive relief to end Defendants' common and uniform policy under the claims set forth herein.

48. Class certification of Plaintiff's claims is also appropriate pursuant to FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Class and Subclass predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

49. Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

50. The Subclass, as defined above, is also proper pursuant to FED. R. CIV. P. 23(c)(5).

### FIRST CLAIM FOR RELIEF: BREACH OF THE IMPLIED WARRANTY

51. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as if they were set forth again herein.

52. The Swagway Hoverboard was advertised and sold by Defendants as safe and fit its ordinary purpose of transportation and use and free from defect.

53. Plaintiff and Class and Subclass members purchased the Swagway Hoverboard on the Defendants' implied warranties that the Swagway Hoverboard was safe and fit the purposes for which it was intended to be used and free from defects. Had they known that, contrary to the implied warranties that the Swagway Hoverbaord was not safe and fit the purposes for which it was intended to be used and not free from defect, they would not have purchased it.

54. The Swagway Hoverboard was inherently defectively designed or manufactured so as to cause it to not to be safe and fit for the purposes for which it was intended to be used and not to be free from defect.

55. Any disclaimers of implied warranties are ineffectual, as they were not provided to Plaintiffs or Class or Subclass members or otherwise made known to them, who were not informed of the material non-compliance of the goods.  In addition, any such disclaimers are unconscionable under the circumstances.

56. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and the Class and Subclass members have sustained economic losses and other damages for which they are entitled to compensatory and/or equitable damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF:
## FOR UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER STATE LAW

57. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as if they were set forth again herein.

58. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in connection with their activities set forth above vis-à-vis Swagway Hoverboards.

59. Had Defendants not engaged in the wrongful and deceptive conduct described above, Plaintiffs and members of the Class and Sublcass would not have purchased Swagway Hoverboards and they have therefore proximately suffered injury in fact and ascertainable losses.

60. Defendants' deceptive, unconscionable or fraudulent representations and material omissions to consumers, including the failure to inform consumers of the

dangers and defects with the product, constituted unfair and deceptive acts and practices in violation of state consumer protection statutes. Defendants' failure to abide by their statutory duties has been or may be continuing.

61. Defendants engaged in their wrongful conduct while at the same time obtaining sums of money from Plaintiff and Class and Subclass members.

62. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes, including, but not limited to, N.Y. Gen. Bus. Law §§ 349 et seq. and 350-e, et seq., as well as substantially similar statutes in effect in the other States.

63. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to a judgment that declaring that Defendants' actions have been in violation of their statutory duties, that provides injunctive relief in order to ensure continued wrongful and similar acts do not occur hereafter, and that provides for, as provided for law, compensatory damages, treble damages, attorneys' fees, and/or costs of suit.

### THIRD CLAIM FOR RELIEF:
### Unjust Enrichment

64. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 as if they were set forth again herein.

65. Defendants benefitted from the sale of the Swagway.

66. Defendants' benefit came at the expense of Plaintiff and the other members of the Class given their wrongful acts and practices, as discussed above.

67. Defendants' retention of some or all of the monies they have gained through their wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

74. Defendants should be required to disgorge their unjustly obtained monies and to make restitution to Plaintiffs and the other members of the Class, in an amount to be determined, of the monies by which they have been unjustly enriched.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against Defendants as follows:

   A. For an Order certifying the Class and Subclass and any other appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff and his counsel to represent such Classes and subclasses as appropriate under Rule 23(g);

   B. For declaratory and injunctive relief;

   C. For compensatory, equitable and/or restitutionary damages according to proof and for all applicable statutory damages under the uniform deceptive acts and practices laws of the states encompassed by the Class;

   D. For an award of attorneys' fees and costs;

   E. For prejudgment interest and the costs of suit; and

   F. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: December 10, 2015

By: s/Irwin B. Levin
Irwin B. Levin, No. 8786-49
Richard E. Shevitz, No. 2007-49
Vess A. Miller, No. 26495-53
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

Seth R. Lesser
Jeffrey A. Klafter
Fran L. Rudich
Michael H. Reed
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220

Robert N. Kaplan
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**ATTORNEYS FOR PLAINTIFF**